**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

**LYNDA JOHNSON,**

    **Plaintiff,**

**vs.**                                              **CASE NO. 1:04CV44-MMP/AK**

**JO ANNE B. BARNHART,
Commissioner of Social Security**

    **Defendant.**

_____/

**REPORT AND RECOMMENDATION**

This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act (Act) for review of a final determination of the Commissioner of Social Security (Commissioner) finding that Plaintiff was not disabled prior to March 1, 1999.

Upon review of the record, the Court concludes that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

**A.    PROCEDURAL HISTORY**

Plaintiff filed an application for DIB and SSI on September 23, 1998, alleging disability from diabetes, depression, hypertension, mobility problems, and three

herniated discs. Although denied initially, upon reconsideration Plaintiff was awarded disability as of March 1, 1999, meeting the listing for peripheral arterial disease (Listing 4.12). Plaintiff petitioned for a hearing before an administrative law judge (ALJ), challenging the onset date, which she first contended was February 1, 1998, but which she amended to April 1, 1997. Thus, the sole issue before the ALJ was whether she was disabled from April 1, 1997, through February 28, 1999. The ALJ conducted a hearing on December 14, 2000, and entered an unfavorable decision on March 30, 2001. The Appeals Council denied Plaintiff's request for review, thus making the decision of the ALJ the final decision of the Commissioner. This action followed.

B.  **FINDINGS OF THE ALJ**

The ALJ found evidence to support that she had a central disc protrusion at L5-S1 with disc bulging at L4, disc herniation at C6-7 with a broad based disc bulge at C5-6, early arterial insufficiency of her left leg, and diabetes during the time in question, and these impairments were severe. (R. 16). The ALJ specifically found her depression to be not severe based on the latest opinion of her treating physician, Dr. Amiel, who found her to be relatively stable on Zoloft and doing better than the year before. (R. 16). Another of Plaintiff's treating physicians, Dr. Jeffrey Klein, also found her depression to be mild. This finding is also in conformity with the Psychiatric Review form completed by a non-examining state agency psychologist, Dr. Jane Cormier. (R. 17). The ALJ notes that although Plaintiff meets the Listing 4.12 for arterial insufficiency, the earliest report regarding this condition is March 1, 1999, such that there is no evidence that this condition met the listing during the time in question. (R. 17). Based on the record as a

**No. 1:04CV44-MMP/AK**

whole, the ALJ finds that during the time in question Plaintiff could lift 10 pounds occasionally; less than 10 pounds frequently; that she could sit six hours in an eight hour day; stand and walk for two hours in an eight hour day; and therefore could perform a full range of sedentary during the time in question. (R. 17). Given her RFC, the ALJ further found that she could perform her past relevant work as a project coordinator throughout the period in question. (R.20).

## C.     ISSUES PRESENTED

Plaintiff argues that the ALJ's decision that she did not have a severe mental impairment is unsupported by the record; specifically, that the ALJ should have adopted the opinion of the treating physician or explained why he rejected his opinion in favor of the non-examining physician's opinion and should have obtained a mental capacity assessment.

The government responds that the ALJ properly found her depression to be non-severe because she reported only two incidents during the relevant time period (April 1, 1997 through February 28, 1999) where she suffered from a depressed mood. She also reported some work activity during this time period, including writing a book and seemed more focused on physical problems at the time. Plaintiff also did not seek any mental health treatment after February 27, 1998. The ALJ gave more weight to her treating physician, Dr. Amiel, who found her to have depression partly in remission, over the opinion of Dr. Nazario, a one time consulting physician.

**No. 1:04CV44-MMP/AK**

The government also contends that no mental RFC was necessary since the ALJ determined that her depression was not severe, imposing only slight restrictions on her daily living activities.

The issue thus presented is whether the Commissioner's decision that Claimant is not disabled is supported by substantial evidence in the record and decided by proper legal standards.

D.  **STANDARD OF REVIEW**

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court.  The Commissioner's decision must be affirmed if it is supported by substantial evidence and the correct legal standards have been applied.  Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997).  Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).  "Substantial evidence" has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam).  It is more than a scintilla, but less than a preponderance.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted).  The court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996).  It must determine only if substantial evidence supports the findings of the Commissioner.  See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam).  Even if substantial evidence exists which is contrary to

**No. 1:04CV44-MMP/AK**

the Commissioner's findings, where there is substantially supportive evidence of the Commissioner's findings, the court cannot overturn them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Unlike the deferential review accorded to the Commissioner's findings of fact, his conclusions of law are not presumed valid. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). The Commissioner's failure to apply correct legal standards or to provide the reviewing court with an adequate basis for it to determine whether proper legal principles have been observed requires reversal. Id. (citations omitted).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps:

    1.    Is the individual currently engaged in substantial gainful activity?

    2.    Does the individual have any severe impairment?

    3.    Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

**No. 1:04CV44-MMP/AK**

    4.    Does the individual have any impairments which prevent past relevant work?

    5.    Do the individual's impairments prevent any other work?

A finding of disability or no disability at any step renders further evaluation unnecessary. Plaintiff bears the burden of establishing a severe impairment that keeps him from performing his past work. If Plaintiff establishes that his impairment keeps him from his past work, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given Plaintiff's impairments, Plaintiff can perform. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, Plaintiff must prove that he cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987). It is within the district court's discretion to affirm, modify, or reverse a Commissioner's final decision with or without remand. 42 U.S.C. § 405(g); Myers v. Sullivan, 916 F.2d 659, 676 (11th Cir. 1990).

## E.   SUMMARY OF CLAIMANT'S RELEVANT MEDICAL HISTORY

Plaintiff takes issue only with the ALJ's findings regarding her depression, and the only time period relevant to the ALJ's determination is April 1, 1997 through March 1, 1999. Thus, the only medical evidence relevant to the Court's determination is the following:

**No. 1:04CV44-MMP/AK**

Dr. Michael Amiel reports that he examined Plaintiff on November 26, 1996, January 6, February 24, and March 24, 1997. (R. 85-90). On November 26, 1996, he found Plaintiff to have sleep difficulties, depressed mood, and fatigue. (R. 89). He prescribed Zoloft, which she later reported to have improved her mood, sleep and energy level on January 6, 1996. She discontinued the Zoloft to be "more alert" and had only restarted it two weeks prior to the February 24, 1997, exam, and was noted to have sleep difficulties and a depressed mood. She was encouraged to remain on Zoloft. At the March 24 exam, she reported fair mood and adequate sleep. His overall impression was depression in partial remission with therapy and anti-depressants. She reported some work activity, but he felt there was an issue with somatoform disorder in that her physical complaints were out of proportion to her actual condition. (R. 90).

In a report dated July 14, 1997, Dr. Amiel summarized examinations on May 5, 1997, June 4, 1997, and July 8, 1997. (R. 87-88). She reported compliance with her Zoloft regimen and a fair mood throughout the sessions.

In a report dated November 17, 1997, Dr. Amiel summarized examinations on August 7, September 10, and November 11, 1997, and found her to be "relatively stable" on Zoloft and her therapy with Dr. Beaty. (R. 85-86).

In a report dated February 28, 1998, Dr. Amiel reported on examinations of December 17, 1997, January 30, 1998, and February 27, 1998. (R. 83-84). His overall impression again was that she was relatively stable on Zoloft and continued therapy with Dr. Beaty.

**No. 1:04CV44-MMP/AK**

Dr. Beaty filed a report indicating that he saw Plaintiff from October 1, 1996, through March 1997, and found her to be "sad, frustrated, labile" with good concentration and memory intact, expressive and receptive, with good appetite, restless sleep and crying spells.  (R. 80-82).

Dr. Jeffrey Klein treated Plaintiff from May 1998 to September 1998 for her physical problems following the car accident.  (R. 101-111).  She was referred to Klein following a car accident (R.91-98), which caused neck, back and leg pain.  (R. 109). His impression was head injury with post-concussive syndrome and soft tissue injury of the neck and back with possible radiculopathy.  (R. 110).  He ordered MRI's of the lumbar spine, cervical spine and brain.  (R. 106-108).  Her brain scan was normal, but the cervical spine showed left sided herniated nucleus pulposus at the C6-7 level, impinging upon the left thecal sac and left side of the cervical cord, with broad based disk bulging at C5-6, and moderate spondylosis changes.  (R. 107).  The MRI of the lumbar spine revealed central disk protrusion at L5-S1, causing some impingement upon the thecal anterior sac, broad based disk bulging versus a central disk protrusion also noted at the L4-5 level, which is also impinging upon the anterior thecal sac, and straightening of the mid and upper lumbar spine.  (R. 106).  Dr. Klein found her to have suffered a significant spinal injury from the car accident, and he considered her disabled from anything but sedentary work.  (R. 104).  He also found her to have history of "mild depression."  (R. 104).  He referred Plaintiff to Dr. Kennedy for a surgical evaluation,

**No. 1:04CV44-MMP/AK**

although he did not believe she was candidate for surgery at that time. (R. 103). As of September 28, 1998, she remained unchanged. (R. 101).

Plaintiff reported to Dr. Nazario on November 25, 1998, that she had a fifteen year history of depression, exacerbated by her diabetes, financial and other health problems. (R. 112-115). She stated that she was able to care for her personal needs, grocery shop, cook, and take care of household chores, but does not sleep well, cries daily, and is anxious daily. (R. 113). Dr. Nazario found that her "emotional condition is debilitating," and that she was unable to seek or maintain employment until she became more stable. (R. 115).

A Psychiatric Review Technique form dated December 14, 1998, by Dr. Jane Cormier, found Plaintiff to have depression, which was not severe, and noted that Dr. Nazario's finding of a debilitating condition was at odds with her reports of adaptive functioning. (R. 117). Dr. Cormier found her to have no restrictions in her daily activities, only slight limitations in maintaining social functioning, and to be seldom limited in concentration, persistence or pace, with no episodes of deterioration. (R. 123).

## F.     SUMMARY OF THE ADMINISTRATIVE HEARING

At the hearing held on December 14, 2000, Plaintiff appeared with her present attorney, N. Albert Bacharach, for a determination of an earlier onset date of April 1997. (R. 164). Plaintiff testified that she last worked in July 1995 as an LPN. (R. 165). She suffered a whiplash type injury in 1998 and received a settlement of $20,000. (R. 168).

**No. 1:04CV44-MMP/AK**

She was unable to work at this time because of the diabetes and depression. (R. 168). Between 1995 and the summer of 1997 she did workshops on motivation and self-esteem for young girls once a month for approximately $100. (R. 170-171). Since that time she has been completely unable to do any type of work, except she wrote a book of poetry, which she self-published and sold about 200 copies. (R. 172-173). She has taken medication for depression since the 1980's. (R. 174). She took medication prescribed by Dr. Amiel until she stopped seeing him the winter before 1998. (R. 175). She saw no one since them because she could not afford to, and Drs. Amiel and Beaty were treating her in conjunction with vocational rehabilitation and her worker's compensation claim respectively. (R. 176). The workers compensation claim arose when she fell while working as a nurse at the health department. (R. 176). She broke her ankle and foot. (R. 176). She said that the Zoloft, prescribed by Dr. Amiel, did little to alleviate her depression. (R. 177). At this time she was unable to sleep, would go days without brushing her teeth or getting out of her nightgown. (R. 177-178). She did this three or four days a week for a year or two from about the summer of 1996 through the end of 1998. (R. 178-183). During this time her children cleaned the house and brought her meals. (R. 183-184). She had no social activities during this time. (R. 185).

### G.   DISCUSSION

At issue is whether substantial evidence supports the ALJ's finding that Plaintiff's depression was not severe during the limited time period between April 1, 1997 and

**No. 1:04CV44-MMP/AK**

February 28, 1999. Evidence of Plaintiff's mental condition during this time can be found in the reports of Drs. Amiel, Beaty, Klein, and Nazario.

Although Dr. Amiel's first examination of Plaintiff found her to have sleep difficulties, fatigue and depressed mood (R. 89), he prescribed her Zoloft and later examinations found her to be "relatively stable." (R. 83-86). Dr. Beaty, who was supposedly seeing Plaintiff on a regular bi-weekly basis during this time, submitted one report indicating that he saw her from October 1, 1996, through March 1997, and found her to be sad, frustrated, and labile, but with good concentration and memory. (R. 80-82). There are no other records of his treatment. Dr. Klein, who was treating Plaintiff for other medical problems, noted her depression to be mild. These are Plaintiff's treating physicians and their opinions should be (and were) afforded greater weight than Dr. Nazario's opinion. Dr. Nazario saw Plaintiff on a one-time consultative basis, and although he opined that her emotional condition was debilitating and prevented her from working "until she became more stable," his opinion was not entitled to as much weight as that of Dr. Amiel. See Wilson v. Heckler, 734 F.2d 513, 516 (11th Cir. 1984); Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986). Further, as Dr. Jane Cormier noted, Dr. Nazario's report of a disabling mental condition was not in line with his other findings that she took care of her personal needs, household chores, and otherwise functioned adequately. See Psychiatric Review Form (R. 117-123). Thus, substantial evidence exists in the record to support the ALJ's finding that Plaintiff's depression was not severe prior to March 1, 1999.

**No. 1:04CV44-MMP/AK**

Accordingly, it is respectfully **RECOMMENDED**:

That the decision of the Commissioner denying benefits be **AFFIRMED**.

At Gainesville, Florida, this <u>12th</u> day of August, 2005.


        <u>s/ A. KORNBLUM</u>
        **ALLAN KORNBLUM**
        **UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.

**No. 1:04CV44-MMP/AK**